IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ILLINOIS, COMMONWEALTH OF KENTUCKY, and STATE OF NORTH CAROLINA,<br><br>Plaintiffs<br><br>v.<br><br>FORTUNE HI-TECH MARKETING, INC., a Kentucky corporation, et al.,<br><br>Defendants. | Civil No. 13cv578<br><br>Judge John W. Darrah<br>Magistrate Arlander Keys |

## TEMPORARY RECEIVER'S FIRST MOTION FOR APPROVAL AND PAYMENT OF TEMPORARY RECEIVER'S AND PROFESSIONALS' FEES AND EXPENSES FOR THE PERIOD FROM THE INCEPTION OF THE RECEIVERSHIP THROUGH FEBRUARY 28, 2013; MEMORANDUM OF FACTS AND LAW IN SUPPORT THEREOF

Temporary Receiver Robb Evans and Robb Evans & Associates LLC ("Temporary Receiver") hereby move the Court for an order approving and authorizing payment of the Temporary Receiver's and professionals' fees and expenses incurred from the inception of the receivership through February 28, 2013 (the "initial expense period"). This Motion is made pursuant to Section VII.G. of the Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of Receiver, Other Equitable Relief and Order to Show Cause Why A Preliminary Injunction Should Not Issue (Doc. No. 23) ("Temporary Restraining Order") and Local Rule 66.1(a)(1).

The Temporary Receiver seeks approval and authorization for payment of the fees and expenses incurred during the initial expense period, including the following:

LA 18028353.1

A. Fees and expenses of the Temporary Receiver, including Receiver's fees, Senior Staff fees, and Support Staff fees totaling $238,433.65, and Receiver's expenses totaling $59,701.34;

B. Attorneys' fees in the sum of $24,235.65 and costs of $146.71 incurred to the Temporary Receiver's lead counsel, McKenna Long & Aldridge LLP, for the total sum of $24,382.36;

C. Attorneys' fees in the sum of $10,453.00 and costs of $157.02 incurred to the Temporary Receiver's counsel in Lexington, Kentucky, Wyatt Tarrant & Combs LLP, for the total sum of $10,610.02; and

D. Attorneys' fees in the sum of $3,985.00 incurred to the Temporary Receiver's local counsel in Chicago, Illinois, Barnes & Thornburg LLP.

The total Temporary Receiver's fees and expenses and professionals' fees and expenses incurred during the initial expense period for which approval and authorization for payment is sought is $337,112.37.

The Temporary Receiver further moves the Court for an order approving notice of this Motion as sufficient based on (a) service of the Motion and all supporting papers on the parties to this action; (b) service of a Notice of Hearing on the Motion on all known non-consumer creditors of the receivership estate with the Temporary Receiver offering to provide a complete copy of the Motion to any interested party upon written request; and (c) posting of the Motion and supporting pleadings, exclusive of time and billing records, on the Temporary Receiver's web site for this case.

This Motion is made pursuant to Local Civil Rule 66.1(a)(1) and the Temporary Restraining Order (Doc. No. 23) and is made and based on the separate Notice of Hearing on the

Motion, the Notice of Hearing and Notice of Motion served on the known non-consumer creditors, this Motion, the supporting memorandum of facts and law and declarations of Brick Kane and Gary Owen Caris filed concurrently herewith, the Report of Temporary Receiver's Activities for the period from January 24, 2013 through February 19, 2013 (Doc. No. 58) ("Temporary Receiver's Report"), the other pleadings, records and files of the Court in this case of which the Temporary Receiver requests the Court take judicial notice, and on such further oral and documentary evidence and arguments of counsel as may be presented at the hearing on the Motion.

DATED: April 2, 2013                                  Respectfully Submitted,

                                                      McKENNA LONG & ALDRIDGE LLP

                                              By:     /s/ Gary Owen Caris
                                                      McKenna Long & Aldridge, LLP
                                                      Gary Owen Caris (Cal. SBN 088918)
                                                      Lesley Anne Hawes (Cal. SBN 117101)
                                                      300 S. Grand Avenue, 14th Floor
                                                      Los Angeles, CA 90071
                                                      (213) 688-1000 (Telephone)
                                                      (213) 243-6330 (Facsimile)
                                                      E-mail: gcaris@mckennalong.com;
                                                      E-mail: lhawes@mckennalong.com

DATED: April 2, 2013                                  BARNES & THORNBURG LLP

                                              By:     /s/ Deborah L. Thorne
                                                      Deborah L. Thorne,
                                                      Barnes & Thornburg, LLP
                                                      One North Wacker Drive, Suite 4400
                                                      Chicago, IL 60606-2833
                                                      Tel.: (312) 214-8307
                                                      Fax: (312) 759-5646
                                                      E-mail: dthorne@btlaw.com

                                                      Attorneys for Temporary Receiver Robb Evans and
                                                      Robb Evans & Associates LLC

LA 18028353.1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

This action is a civil enforcement action commenced by the Federal Trade Commission, the State of Illinois, the Commonwealth of Kentucky and the State of North Carolina against defendants Fortune Hi-Tech Marketing, Inc., FHTM, Inc., Alan Clark Holdings, LLC, FHTM Canada, Inc., Fortune Network Marketing (UK) Limited, Paul C. Orberson and Thomas A. Mills. On January 24, 2013, the Court issued the Temporary Restraining Order (Doc. No. 23) appointing the Temporary Receiver as Temporary Receiver over Fortune Hi-Tech Marketing, Inc., FHTM, Inc., Alan Clark Holdings, LLC, FHTM Canada, Inc., Fortune Network Marketing (UK) Limited "and their successors and assigns, as well as any subsidiaries, and any fictitious business entities or business names created or used by these entities" ("Receivership Defendants"). By stipulation of the parties, on February 7, 2013 the Court extended and made certain modifications of the Temporary Restraining Order and postponed the hearing on the Order to Show Cause Why A Preliminary Injunction Should Not Issue to March 13, 2013 (Doc. No. 28). At a hearing conducted on February 26, 2013, the Temporary Restraining Order was further extended and the preliminary injunction hearing postponed to May 1, 2013.

Under the provisions of the Temporary Restraining Order, the compensation of the Temporary Receiver and its professionals is subject to approval of the Court, and the Temporary Receiver's initial fee motion is to be submitted within sixty days. Temporary Restraining Order, Section VII.G. This fee motion is the Temporary Receiver's initial fee motion and covers the period from the inception of the temporary receivership through February 28, 2013 (the "initial fee period").

## II.   SUMMARY OF ACTIVITIES OF TEMPORARY RECEIVER AND ITS COUNSEL DURING THE INITIAL EXPENSE PERIOD AND COMPENSATION REQUESTED

The Receivership Defendants include multiple entities operating a common enterprise whose business operations include an office location in Lexington, Kentucky and a warehouse in Danville, Kentucky. The Temporary Receiver's representatives prepared for a coordinated entry into these facilities in order to secure the physical assets and data at these locations. In addition to these two physical locations, the Receivership Defendants operated 20 different web sites which the Temporary Receiver's IT personnel had to take steps to secure and disable and to preserve the content of the materials. As set forth below, the Temporary Receiver's initial activities included securing the business records and physical assets, meeting with and interviewing the Receivership Defendants' personnel and principals, and conducting an extensive review and detailed analysis of the Receivership Defendants' financial records and other business records and files to create an assessment of the business operations and the ability of the Receivership Defendants to operate lawfully and profitably. The Temporary Receiver suspended business operations of the Receivership Defendants and has concluded that the Receivership Defendants' business could not be operated lawfully and profitably, as reflected in the Temporary Receiver's Report filed February 20, 2013.

The Temporary Receiver seeks approval and authorization for payment of the Temporary Receiver's fees and expenses and those of its professionals described in the Temporary Receiver's financial report entitled Receivership Administrative Expenses and Fund Balance from Inception (January 24, 2013) to February 28, 2013 ("Financial Summary") attached as Exhibit 1 to the Declaration of Brick Kane filed in support of this Motion. The fees and expenses of the Temporary Receiver's members and staff are detailed in the billing summaries attached to the Kane Declaration as Exhibits 2 and 3. During the initial expense period, the

Temporary Receiver has incurred fees for the services of the Temporary Receiver of $91,720.80, Senior Staff fees of $144,332.05, and Support Staff fees of $2,380.80. The Temporary Receiver has incurred Temporary Receiver's expenses of $59,701.34, including expenses to Hays Financial Consulting, LLC for services in connection with the initial entry and the initial securing and review of the records of the Receivership Defendants and for travel expenses.

The Temporary Receiver also seeks approval and authorization for payment of the fees and expenses incurred during the initial expense period for the Temporary Receiver's attorneys, which are also summarized in the Financial Summary. These include attorneys' fees of $24,235.65 and costs of $146.71 for the services of McKenna Long & Aldridge LLP ("McKenna Firm"), the Temporary Receiver's lead counsel, attorneys' fees of $10,453.00 and costs of $157.02 for the services of the Temporary Receiver's counsel in Kentucky, Wyatt Tarrant & Combs, LLP ("Wyatt Firm"), and attorneys' fees of $3,985.00 for the services of the Temporary Receiver's local counsel in Chicago, Barnes & Thornburg LLP ("Barnes Firm"). These fees and expenses are supported by detailed billing records of each of these firms which are attached as Exhibits 1, 2 and 3, respectively, to the Declaration of Gary Owen Caris filed in support of this Motion.

    A.    <u>Initial Entry and Activities to Secure Receivership Defendants' Records and Assets</u>

The Temporary Receiver entered and took possession and control of the Receivership Defendants' business on January 28, 2013. The Temporary Receiver met with the Receivership Defendants' primary shareholders, defendants Paul C. Orberson ("Orberson") and Thomas A. Mills ("Mills"). As set forth in detail in the Temporary Receiver's Report and summarized below, Fortune Hi-Tech Marketing, Inc., FHTM, Inc., FHTM Canada, Inc., and Fortune Network

Marketing (UK) Limited (individually and collectively "FHTM"), and Alan Clark Holdings, LLC ("Alan Clark") operated as a common enterprise and ran a large multi-level marketing business which the Temporary Receiver has preliminarily concluded was in the nature of a pyramid scheme.

The Receivership Defendants' enterprise is founded on the creation of a network of tens of thousands of "independent representatives" who pay a fee to FHTM to enroll as a member of its sales force and who earn commissions selling products offered by FHTM and from other third party companies. The products consist primarily of health and beauty products and services. The independent representatives also earn commissions by referring new enrollees to the companies, thus further expanding the network of independent representatives and providing additional revenues to FHTM through enrollment fees - common hallmarks of a pyramid scheme.

After the Temporary Receiver entered and secured the premises and records at the two Kentucky locations, the Temporary Receiver analyzed the business and financial operations of the enterprise. The Temporary Receiver has also taken control of a warehouse facility of FHTM in Canada and determined that the United Kingdom affiliate, Fortune Network Marketing (UK) Limited, had ceased operations prior to the commencement of the receivership.

The Temporary Receiver worked with the principals of the Receivership Defendants to develop a broadcast e-mail message which was sent to approximately 45,000 independent representatives of the receivership entities to advise them of the suspension of operations during the interim period prior to the court hearing on February 26, 2013. In addition, the Temporary Receiver participated in a pre-scheduled conference call with over 400 of the Receivership Defendants' senior sales representatives that had been scheduled by the companies for the

morning that the Temporary Receiver entered the premises, and the Temporary Receiver advised those on the call of the civil enforcement action and the Court's issuance of the Temporary Restraining Order.

After taking possession and control of the Receivership Defendants, the Temporary Receiver's IT personnel disabled the 20 web sites operated by the companies. In disabling the 20 web sites operated by the Receivership Defendants, the Temporary Receiver diverted on-line web site traffic to the Temporary Receiver's web site for the case which includes a notice to interested parties advising of the filing of the civil enforcement action and which includes a copy of the Temporary Restraining Order. A copy of the Temporary Receiver's Report has also been posted to the Temporary Receiver's web site for the case.

The Temporary Receiver also took steps to immediately begin notifying banks and other financial institutions determined to potentially be in possession of receivership funds to freeze deposits and prevent new charges from being made for enrollment fees and product sales. The Temporary Receiver initially froze approximately $873,000 in funds at various financial institutions. The Temporary Receiver has also been advised that approximately $840,000 is being held in various merchant processing accounts. Those funds could be subject to future chargebacks. As of February 28, 2013, the Temporary Receiver has obtained and collected over $631,000 from the various bank accounts of the Receivership Defendants and other sources described in the Temporary Receiver's Financial Summary attached as Exhibit 1 to the Declaration of Brick Kane filed in support of this Motion.

B.  Analysis of Business Operations and Financial Records and Temporary Receiver's Report

The Temporary Receiver's Report describes the meetings and interviews conducted with the Receivership Defendants' principals Orberson and Mills. In addition to meeting with the principals of the Receivership Defendants, the Temporary Receiver met with key personnel involved in the business and financial structure and reporting for the companies, including the Vice President of Operations for Canada and the Chief Analytics Officer, the Comptroller, and the Information Technology Director.

The Temporary Receiver's members and staff analyzed financial statements and balance sheets for the Receivership Defendants and obtained information regarding the status of inventory, accounts receivable and other assets. The Temporary Receiver preliminarily investigated the value of the Receivership Defendants' inventory, which is a significant component of the assets listed on the balance sheets, and the fixed assets. The Temporary Received also investigated the liabilities listed on the balance sheet and found that approximately $1.5 million of the approximate $3.2 million in liabilities on the FHTM balance sheet are for commissions and bonuses payable to the independent representatives.

The Temporary Receiver analyzed the companies' accounting records and banking records to analyze the Receivership Defendants' sources of revenues, their expenses and the payments made to the shareholders and independent representatives. The Temporary Receiver also reviewed extensive business records detailing the composition of the independent representatives, the number of independent representatives who re-enrolled after their initial enrollment, and the commissions paid to the independent representatives. These business and accounting records were provided to the Temporary Receiver by the Receivership Defendants.

The Temporary Receiver specifically reviewed the sources comprising the annual revenues of the Receivership Defendants for the four full years of 2009 through 2012, including the portion of revenues retained by Alan Clark from commissions receivable. The Temporary Receiver further examined the independent representatives fees received and the renewal fees received by the Receivership Defendants during the same four-year period and prepared a breakdown of the total annual revenue from those sources. The Temporary Receiver conducted a detailed examination of records concerning the independent representatives, the number of such representatives during the years 2009 through 2012 in the United States and Canada and the number of independent representatives who renewed their enrollment each year from 2009 through 2011. The Temporary Receiver also performed a detailed analysis of the commission and payment structure and amounts paid to the independent representatives during those years and the components of the commissions paid, including the portion of the commissions paid to independent representatives on account of a Customer Acquisition Bonus ("CAB") and the portion paid on account of Customer Generated Usage ("CGU"). The CAB commission is paid for new independent representatives enrolled with the companies and the CGU commission is paid based on sales of products and services.

Based on the Temporary Receiver's review of the extensive financial and business records of the Receivership Defendants, the Temporary Receiver prepared its Temporary Receiver's Report. The Temporary Receiver's Report addresses the Temporary Receiver's preliminary financial analysis, the results of its examination of the financial and business operations of the Receivership Defendants and the Temporary Receiver's preliminary conclusions and support for its finding that the Receivership Defendants operated what is in the nature of a pyramid scheme.

As detailed in the Temporary Receiver's Report filed on February 20, 2013, from 2009 through 2012, the Receivership Defendants generated total gross revenues of over $252 million. FHTM had enrolled hundreds of thousands of independent representatives, more than 88% of whom never recovered enough from their sales and marketing activities to recoup the amounts paid to the Receivership Defendants for enrollment fees. Approximately 98% of independent representatives earned commissions totaling less than $1,000. Only a small percentage of the independent representatives renewed their membership after the first year, with approximately 94% to 97% failing to renew after their first year, during each year from 2009 through 2011. The independent representative fees and renewal fees represented between 15.21% and 41.63% of the total revenue of the Receivership Defendants during the four years of 2009 through 2012, and the commissions paid show that the CAB commissions for enrollment of new independent representatives constituted between 62.16% and 90.39% of commissions paid to the independent representatives. The Temporary Receiver's Report also includes tables analyzing the number of active independent representatives between 2009 and 2012 and the small percentage who earned commissions in excess of $10 and total net commissions over $1,000, and detailed spreadsheets showing the stratification of the net commissions paid each year from 2009 through 2012. *See* Temporary Receiver's Report, pp. 8-10, Tabs 3, 4, 5(A) and 5(B).

The Temporary Receiver reviewed the amounts paid to the principals Orberson and Mills as salary and distributions, as well as payments to other shareholders, who appear to be relatives of Orberson and Mills. The Temporary Receiver prepared a spreadsheet summarizing this analysis and detailing payments made from the inception of the Receivership Defendants' business in 2001 through 2013 by FHTM and Alan Clark. The analysis is summarized in the Temporary Receiver's Report at pages 10 and 11 and in Tab 6. From the inception of these

companies through January 2013, the Receivership Defendants paid dividends and salary to shareholders of over $48.8 million. Almost all annual retained earnings of the companies during the period from 2009 to 2012 were paid out to shareholders.

C. Analysis of Consumer Complaints

The Temporary Receiver's examination of the Receivership Defendants' business records also included an analysis of consumer complaints received by and about the companies. The Temporary Receiver's members and staff interviewed the companies' Director of Compliance whose job duties included responding to consumer complaints made to the Attorney General and Better Business Bureau. The Receivership Defendants maintained files of complaints in its compliance department, and the Temporary Receiver reviewed 269 of the compliance files pertaining to independent representative complaints and compliance with company policies. The Temporary Receiver also reviewed 595 consumer complaints sent to the Receivership Defendants from January 2011 through January 2013 and analyzed the nature of the complaints made. Those complaints are also described and summarized in the Temporary Receiver's Report.

D. Other Administrative Activities

The Temporary Receiver has addressed other administrative issues since the receivership commenced. The Temporary Receiver engaged a law firm in Lexington, Kentucky, the Wyatt Firm, to provide assistance and control over access to the Receivership Defendants' business facilities in Kentucky and to monitor any review or copying of records by the parties. The Temporary Receiver has responded to requests for information and documents by the defendants. The Temporary Receiver also engaged Hays Financial Consulting, LLC to assist in the initial

seizure and suspension of the business and possession, control and initial review and organization of the Receivership Defendants' records at the commencement of the receivership.

The Temporary Receiver has addressed the administration of the 401K plan sponsored by the Receivership Defendants and the steps to be taken to potentially wind down and distribute the assets of the plan given the suspension of business. The Temporary Receiver has addressed personnel and payroll issues in light of the Temporary Receiver's conclusion that the businesses could not be operated profitably and lawfully. The Temporary Receiver also has addressed issues concerning inventory, and approved certain small shipments of products that had been paid for prior to the commencement of the case. With the assistance of counsel as discussed below, the Temporary Receiver has also addressed insurance matters that have been raised by the defendants who are seeking access to insurance policies to fund defense costs and issues of attorney-client privilege with respect to documents and records of the Receivership Defendants. At the time the receivership commenced, the Receivership Defendants were parties to pending litigation, including two cases on appeal, and the Temporary Receiver worked with its counsel to address and take steps to abate those cases in light of the Temporary Restraining Order.

The Temporary Receiver's expenses during the initial expense period include travel expenses of approximately $31,000. The expenses were incurred in connection with the initial entry and taking control of the Receivership Defendants and include expenses for eight members and staff of the Temporary Receiver to travel round trip from Los Angeles, California to Kentucky, one staff of the Temporary Receiver to travel round trip from Monterey, California to Kentucky, and two members and staff to travel round trip from Las Vegas, Nevada to Kentucky. One of the Temporary Receiver's senior staff stayed in Kentucky for twelve days in order to secure and image the Receivership Defendants' computers and electronic data and to secure,

disable and re-route 20 web sites that the Receivership Defendants operated. The other members and staff of the Temporary Receiver stayed only five days or less after the initial entry and control of documents and assets had been accomplished.

E.   Summary of Services of Attorneys for Temporary Receiver

The McKenna Firm has assisted and advised the Temporary Receiver concerning several administrative matters during the initial expense period. Among other activities, the McKenna Firm reviewed the status of certain pending litigation involving the Receivership Defendants. The McKenna Firm contacted counsel for the Receivership Defendants appearing in certain actions, and coordinated with them to file pleadings to abate those actions.

The McKenna Firm also participated in several discussions with counsel for the FTC and the defendants to address various issues raised by the defendants regarding among other things, privileged documents, inventory, mail, access to records and insurance. Counsel for the defendants has sought to access insurance policies of the Receivership Defendants to pay for defense costs in this action, and attorneys from the McKenna Firm have been reviewing various insurance policies and a pre-receivership agreement between FHTM and one of its insurance carriers and advising the Temporary Receiver about insurance coverage issues.

The McKenna Firm has also reviewed the documents and status of a 401K retirement plan sponsored by the Receivership Defendants. The McKenna Firm is evaluating the steps the Temporary Receiver must take regarding the administration of the retirement plan and the options available for distribution of the plan's assets.

The McKenna Firm also assisted the Temporary Receiver in its preparation of the Temporary Receiver's Report, including reviewing and revising the Temporary Receiver's Report and assisting in finalizing the report prior to filing.

The Wyatt Firm has provided assistance to the Temporary Receiver in Kentucky. The Wyatt Firm has provided a paralegal to maintain custody of the keys to the business offices and warehouse and to monitor and supervise access to the inventory and records at these facilities. The Wyatt Firm has assisted the Temporary Receiver in responding to several requests for access to and copies of records by the defendants, with supervision of attorneys from the Wyatt Firm as appropriate.

The Temporary Receiver's local counsel in Chicago, the Barnes Firm, has helped the Temporary Receiver obtain records from the Court and make filings, including the Temporary Receiver's Report. The Barnes Firm also appeared at the hearing conducted on February 26, 2013 in which the Court extended the Temporary Restraining Order, among other relief.

### III. THE TEMPORARY RECEIVER'S AND ITS PROFESSIONALS' FEES AND EXPENSES ARE REASONABLE AND SHOULD BE PAID

It is a fundamental tenet of receivership law that expenses of administration incurred by the receiver, including those of the receiver, his counsel and others employed by him, constitute priority expenses for which compensation should be paid from the assets of the receivership. As explained in the leading treatise *Clark on Receivers*:

> The obligations and expenses which the court creates in its administration of the property are necessarily burdens on the property taken possession of, and this, irrespective of the question who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership. The appointing court pledges its good faith that all duly authorized obligations incurred during the receivership shall be paid.

2 Clark, Ralph Ewing, *A Treatise on the Law and Practice of Receivers* § 637, p. 1052 (3rd ed. 1992).

The Temporary Receiver is an officer of the Court charged with myriad duties under the Court's receivership order, many of which have no relationship to recovery of assets or increasing the funds available for distribution to creditors. The Court has broad discretion in determining the reasonableness of fees to be awarded a receiver. *See In re San Vicente Medical Partners Ltd.*, 962 F. 2d 1402, 1409-1410 (9th Cir. 1992). The Court may evaluate the time and effort expended by the Temporary Receiver with respect to specific projects and aspects of the administration of the estate, and may look to a number of different factors under the case law in approving receiver's and counsel's fees. *In re San Vicente Medical Partners Ltd.*, 962 F. 2d at 1409-1410. Because of the nature of the administrative and other services required in receiverships, the benefit a receiver confers on receivership property cannot be determined based solely on the increase or decrease in the value of property in the receiver's possession. As the Court explained in *Securities and Exchange Commission v. Elliott*, 953 F. 2d 1560, 1577 (11th Cir. 1992):

> [I]t is sometimes difficult to ascertain what type of benefits a receiver has bestowed on receivership property. . . . .
>
> [A] benefit to a secured party may take more subtle forms than a bare increase in monetary value. Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation. [Citations omitted.]

*Securities and Exchange Commission v. Elliott*, 953 F. 2d at 1577.

The Temporary Receiver and its professionals have performed numerous tasks under time-sensitive circumstances to take control of multiple Receivership Defendants, assets in

disparate locations, 20 separate web sites and extensive electronic and other business and financial records. Given the large network of tens of thousands of independent representatives, the Temporary Receiver also had to act quickly to establish communications and create access to information regarding the receivership for those representatives and the public. The Temporary Receiver had to act quickly to serve notices on banks and merchant processors to freeze and secure potential cash assets of the receivership estate and to cause receivership funds to be turned over to the Temporary Receiver's possession.

The Temporary Receiver and its staff also analyzed more than four years of financial and business records of the Receivership Defendants to evaluate whether the Receivership Defendants could operate lawfully and profitably under the Temporary Restraining Order. That analysis in turn required an examination and breakdown of the sources of the more that $250 million in revenues of these entities received since 2009 as well as a detailed analysis of the independent representative network, the renewals after initial enrollment by tens of thousands of independent representatives and the commissions paid to those independent representatives over a four-year period. The Temporary Receiver prepared a detailed Temporary Receiver's Report with supporting data addressing the Temporary Receiver's findings and analysis of the business operations of the Receivership Defendants and the basis for the Temporary Receiver's conclusion the Receivership Defendants could not operate lawfully and profitably.

The Temporary Receiver and its professionals faced numerous administrative issues in the early stages of the receivership, including developing procedures for access to records by the parties, addressing inventory and insurance issues and the 401K retirement plan sponsored by the Receivership Defendants. This motion establishes that the Temporary Receiver, its staff and its professionals rendered reasonable and necessary services for the receivership estate since the

commencement of the receivership that were beneficial to the estate. *See Federal Trade Commission v. Capital Acquisitions & Management Corp.*, 2005 U.S. Dist. LEXIS 18504 (N.D. Ill. August 26, 2005). The Temporary Receiver submits the fees are reasonable in light of the services rendered and the results obtained, and that the fees and expenses requested should be awarded in their entirety. As set forth above and in Exhibit 1 to the Declaration of Brick Kane in support of the Motion, there are sufficient assets in the receivership estate to allow for payment of all fees and expenses requested.

Under LR 66.1(a)(1), the Court has discretion to fix the allowance of compensation of the Temporary Receiver and its counsel. Pursuant to Section VII.G of the Injunction, the Temporary Receiver has provided notice of this Motion by serving the parties to the case or their counsel and all other parties who have filed appearances in the case. The Temporary Receiver also has caused a notice of this Motion to also be served on the known non-consumer creditors in the case. In addition, the Temporary Receiver will post a copy of the Motion and supporting declarations, without copies of the time/billing records, on the Receiver's web site for this case and will provide a complete copy of the Motion to any interested party who requests it, to the extent that party has not been served with the Motion.

## IV. CONCLUSION

Based on this Motion, on the supporting declarations of Brick Kane and Gary Owen Caris filed and served concurrently herewith, on the pleadings, records and files of the Court of which the Temporary Receiver requests the Court take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence, including without limitation the Temporary Receiver's Report (Doc. No. 58) and the Temporary Restraining Order (Doc. No. 23), the Temporary Receiver respectfully requests that the Court grant relief as requested in the Motion.

LA 18028353.1

DATED: April 2, 2013                                          Respectfully Submitted,

                                                   McKENNA LONG & ALDRIDGE LLP

                                     By:   /s/ Gary Owen Caris
                                                McKenna Long & Aldridge, LLP
                                                Gary Owen Caris (Cal. SBN 088918)
                                                Lesley Anne Hawes (Cal. SBN 117101)
                                                300 S. Grand Avenue, 14th Floor
                                                Los Angeles, CA 90071
                                                (213) 688-1000 (Telephone)
                                                (213) 243-6330 (Facsimile)
                                                E-mail: gcaris@mckennalong.com;
                                                E-mail: lhawes@mckennalong.com


DATED: April 2, 2013

                                                   BARNES & THORNBURG LLP

                                     By:   /s/ Deborah L. Thorne
                                                Deborah L. Thorne,
                                                Barnes & Thornburg, LLP
                                                One North Wacker Drive, Suite 4400
                                                Chicago, IL 60606-2833
                                                Tel.: (312) 214-8307
                                                Fax: (312) 759-5646
                                                E-mail: dthorne@btlaw.com

                                                Attorneys for Temporary Receiver Robb Evans and Robb Evans & Associates LLC

LA 18028353.1