UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION; ) <br> STATE OF ILLINOIS; ) <br> COMMONWEALTH OF KENTUCKY; and ) <br> STATE OF NORTH CAROLINA, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v. ) <br>  ) <br> FORTUNE HI-TECH MARKETING, INC.; ) <br> FHTM, INC.; ) <br> ALAN CLARK HOLDINGS, LLC; ) <br> FHTM CANADA, INC.; ) <br> FORTUNE NETWORK MARKETING (UK) ) <br> LIMITED; ) <br> PAUL C. ORBERSON; and ) <br> THOMAS A. MILLS ) <br>  ) <br> Defendants. ) | Case No. 13-cv-578 <br><br> Judge John W. Darrah |

**MEMORANDUM OPINION AND ORDER**

On January 24, 2013, Plaintiffs, the Federal Trade Commission ("FTC"), the State of Illinois, the Commonwealth of Kentucky, and the State of North Carolina, filed a sealed Complaint seeking a permanent injunction and alleging that Defendants engaged in a wide-ranging scheme to violate various consumer protection statutes, including the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and similar state consumer protection laws in Illinois, Kentucky and North Carolina. Concurrently with their Complaint, Plaintiffs filed an *ex parte* motion for a temporary restraining order (TRO) requesting an asset freeze, the appointment of a receiver, and other relief. On the same day, the Court granted Plaintiffs' motion, entered the TRO and appointed a temporary receiver to take control of the Corporate Defendants, Fortune

Hi-Tech Marketing, Inc., FHTM, Inc., Alan Clark Holdings, LLC, FHTM Canada, Inc., Fortune Network Marketing (UK) Limited, and their assets.

Defendants have moved to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Eastern District of Kentucky. Plaintiffs have filed a response opposing the transfer, and Defendants have filed a reply.

## BACKGROUND

Defendants, Fortune Hi-Tech Marketing, Inc. and FHTM, Inc., are Kentucky corporations with their principal place of business in Lexington, Kentucky. Defendant Alan Clark Holdings, LLC is a Kentucky limited liability company with its principal place of business in Danville, Kentucky. Defendant FHTM Canada, Inc. is a Canadian corporation that has its registered office in Ottawa, Ontario and its principal place of business in Lexington, Kentucky. Defendant Fortune Network Marketing (UK) Limited is a United Kingdom private limited company that has its registered office in Berkshire, United Kingdom and its principal place of business in Lexington, Kentucky. Defendant Paul C. Orberson is a resident of Kentucky and the President and Director of Fortune Hi-Tech Marketing, Inc. and FHTM, Inc., a Member of Alan Clark Holdings, LLC, and a Director of FHTM Canada, Inc. Defendant Thomas A. Mills is a resident of Kentucky and the Chief Executive Officer of Fortune Hi-Tech Marketing, Inc., the Vice President and Director of FHTM, Inc., a Member of Alan Clark Holdings, LLC, a Director of FHTM Canada, Inc., and the Chief Executive Officer of Fortune Network Marketing (UK) Limited. (Compl. ¶¶ 13-19.) Thus, all of the Defendants are either Kentucky residents or have their principal place of business in Kentucky.

Plaintiffs' Complaint alleges the following. Since approximately 2001, Defendants have collectively operated an illegal pyramid scheme through the recruitment of networked

Independent Representatives ("IRs") to ostensibly sell products and services. (*Id*. ¶¶ 22, 27-37.) In order to become an IR, the consumer paid annual fees and paid additional fees to qualify for commissions and bonuses. According to the Complaint, Defendants falsely claimed IRs would earn high levels of income for selling product and services of companies, such as Dish Network, Frontpoint Home Security, and various cell phone providers, as well as for selling a line of health and beauty products. (*Id*. ¶¶ 23-25, 38-50.) However, Defendants' compensation program was based primarily on providing payments to IRs for the recruitment of new IRs. As a result, many IRs lost more money than they earned. (*Id*. ¶¶ 51-59, 65.)[1] Defendants recruited IRs throughout the United States and Canada.

## ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), a district court may "for the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought." Thus, broken down into its statutory factors, transfer is appropriate where: (1) venue is proper in both the transferor and the transferee courts; (2) the transfer will serve the convenience of the parties and witnesses; and (3) the transfer is in the interest of justice. 28 U.S.C. § 1404(a); *see Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986) (*Coffey*). The district court considers these factors in light of all the

---

[1] Specifically, the Complaint asserts the following claims: Counts I and II: 15 U.S.C. § 45(a) (Section 5(a) of the FTC Act), promoting a pyramid scheme and false earnings claims (*id*. ¶¶ 65-66 and ¶¶ 67-69); Count III: FTC Act, distributing materials to representatives including false and misleading representations (*id*. ¶¶ 70-71); Count IV: Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 and 2A, promoting a pyramid scheme (*id*. ¶¶ 72-78); Count V: Kentucky Consumer Protection Act, KRS 367.170, promoting a pyramid scheme and for false earnings claims (*id*. ¶¶ 84-86); Count VI: Kentucky Consumer Protection Act, KRS 367.832 *et seq*., promoting a pyramid scheme (*id*. ¶¶ 85-93); Count VII: North Carolina Pyramid and Chain Schemes Statute, N.C. Gen. Stat. § 14-291.2, promoting a pyramid scheme (*id*. ¶¶ 94-96); and, Count VIII: North Carolina Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1(a), engaging in false, misleading and deceptive acts. (*Id*. ¶¶ 97-100.)

circumstances, on a case by case basis, and has the sound discretion regarding the weight accorded to each factor. *Coffey*, 796 F.2d at 219. In so ruling, the court may consider facts presented by way of "affidavit, deposition, stipulation, or other relevant documents." *Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983). Furthermore, the party seeking transfer bears the burden of establishing that the transferee court is clearly more convenient. *Coffey*, 796 F.2d at 219-220.

*Venue*

In this case, the first factor is not in dispute; the parties agree that venue is proper both in the Northern District of Illinois and in the Eastern District of Kentucky. The remaining factors are evaluated below.

*Convenience of the Parties and Witnesses*

In evaluating the convenience of the parties and witnesses, courts in this district consider five factors: (1) the plaintiff's initial choice of forum; (2) the *situs* of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties litigating in the respective forums; and (5) the convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000) (*Amoco Oil Co.*).

Plaintiff's Choice of Forum and the Situs of Material Events

A plaintiff's choice of forum is generally given substantial weight, particularly when the chosen forum is the plaintiff's home forum. *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1007 (N.D. Ill. 2007) (*Moore*). However, while it is an important consideration, the plaintiff's choice is not absolute. *Amoco Oil Co.*, 90 F. Supp. 2d at 960.

In this case, Illinois is the home forum of two Plaintiffs, the FTC and the State of Illinois, and is the chosen forum. It is not the home forum of the other two Plaintiffs, the Commonwealth

4

of Kentucky and the State of North Carolina. Since this district is not the home forum of half the Plaintiffs, their chosen forum is entitled to less deference than if it was the home forum of all the Plaintiffs. Indeed, some courts have held that where the federal government is a plaintiff, the choice of forum is entitled to even less weight. *See, e.g., U.S. ex rel. Healthcote Holdings Corp. Inc. v. L'Oreal USA, Inc.*, No. 11 C 1921, 2011 WL 3511064, *at 2 (Aug. 9, 2011) (*Healthcote Holdings Corp. Inc.*) (in *qui tam* actions, where the United States is the real party in interest, the choice of forum is entitled to less weight); *E.E.O.C. v. Area Erectors, Inc.*, No. 06-516-C, 2007 WL 5601487, at *2 (D. Wis. Apr. 23, 2007) ("Although a plaintiff's choice of forum is ordinarily granted significant weight, that weight is diminished in this case because plaintiff EEOC is an agency of the federal government, which is no more a resident of the Western District of Wisconsin than of the Northern District of Illinois."); *United States v. Klearman*, 82 F.Supp.2d 372, 375 (E.D.Pa.1999) (while government's choice of forum properly granted significant weight, "it is not a choice that deserves the same level of deference as does a choice by a plaintiff to bring an action in her home district"). Thus, the choice of forum weighs only slightly against transfer.

Further, the deference paid to the chosen forum is weakened "when another forum has a stronger relationship to the dispute or the forum of plaintiff's choice has no significant connection to the site of material events." *Moore*, 487 F. Supp. 2d at 1007 (citing *Chicago, Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)). Defendants argue that the *situs* of material events is Kentucky and rely on the Complaint's allegations that Defendants operated a nationwide illegal pyramid scheme from their corporate offices in Kentucky and that the scheme impacted victims throughout the United States and Canada. In response, Plaintiffs argue that the *situs* of material events is wherever consumer injury occurred.

5

In this case, where the alleged injury was nationwide, the Northern District of Illinois has no particularly significant connection to the *situs* of material events.  The alleged scheme impacted victims not only in Illinois but throughout the United States and Canada, and there is no reason to believe that any injury occurring in Illinois is more significant than injury that occurred in any other district.  *See, e.g., S.C. Johnson & Son, Inc. v. Buzz Off Insect Shield, LLC*, No. 05 C 1046, 2005 WL 1838512, at *7 (N.D. Ill. July 28, 2005) (granting motion to transfer and finding that, where the alleged injury was nationwide, Illinois had no more significant connection to the *situs* of material events than any other district); *CMG Worldwide, Inc. v. Upper Deck Co.*, No. 1:08-cv-761-RLY-JMS, 2008 WL 4690983, at *4 (S.D. Ind. Oct. 22, 2008) (rejecting plaintiffs' claims that the *situs* of material events occurred in Indiana merely because plaintiffs suffered injury there).  Indeed, Plaintiffs state that "the vast majority of victims . . . .reside neither in Kentucky or Illinois," and note that California and Michigan have many more IRs than Illinois (6,579 in California and 3,098 in Michigan, versus 1,083 in Illinois).  (Pls.' Br. at 7 and 7n5.)

Further, considering that decisions regarding the business would have been made at the Defendants' corporate headquarters in Kentucky and that all the Defendants are either residents of Kentucky or have their place of business in Kentucky, the *situs* of material events appears to be Kentucky.  *See Healthcote Holdings Corp. Inc.*, 2011 WL 3511064 at *2 (holding that although allegedly infringing product was sold in Illinois, the *situs* of material events was New York, where decisions regarding the products were made).  Thus, this factor weighs in favor of transfer.

### Location of Proof

In this case, the source of documentary evidence is centered in Kentucky. However, documentary and digital evidence "is readily transferable and transporting it generally does not pose a high burden upon either party." *Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 06 C 5473, 2009 WL 3055374, at *5 (N.D. Ill. Sept. 18, 2009) (citations omitted). Thus, this factor weighs only slightly in favor of transfer.

### The Convenience of the Parties

The fourth factor considered is the relative convenience of the parties. All of the Defendants reside or have their principal place of business in Kentucky, and co-Plaintiff Commonwealth of Kentucky is located in Kentucky. The FTC attorneys handling the matter are based in the FTC's Chicago office, and there is no FTC office in Kentucky; however, the FTC is a federal agency and litigates nationwide. Although Illinois is more convenient for co-Plaintiff State of Illinois and the local FTC attorneys, it does not appear to be more convenient for the other co-Plaintiff, the State of North Carolina. Since all of Defendants and one of the co-Plaintiffs are located in Kentucky, and one of the co-Plaintiffs is located outside of Illinois, this factor weighs in favor of transfer.

### The Convenience of the Witnesses

The final factor to consider is the convenience of the witnesses, which is generally considered to be of primary importance. *See Tingstol Co. v. Rainbow Sales, Inc.*, 18 F. Supp. 2d 930, 933 (N.D. Ill. 1998). Defendants argue that its former employees will be the most important nonparty witnesses regarding Plaintiffs' claims and Defendants' defenses. Defendants cite to their list of key nonparty witnesses, many of whom live in Kentucky. (*See* Defs.' Reply Br. at 10.) In response, Plaintiffs argue that their important third-party witnesses, including

Defendants' top representatives and "possibly Defendants' third party vendors," live outside of Kentucky. Plaintiffs do not argue that their witnesses live in Illinois, only that it will be more convenient for those witnesses to travel to Illinois. Thus, this factor weighs in favor of transfer.

The Interest of Justice

In analyzing the interest of justice, the appropriate analysis focuses upon traditional notions of judicial economy, the speed at which cases proceed to trial, and the courts' familiarity with applicable law and desire to resolve controversies in their locales. *TIGS Ins., Co. v. Brightly Galvanized Prods., Inc.,* 911 F. Supp. 344, 346 (N.D. Ill. 1996).

When analyzing the speed at which cases proceed to trial, courts consider the median number of months from filing to disposition, as well as the median number of months from filing to trial. *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 837 (N.D. Ill. 2004). For Fiscal Year 2012, the median time from filing to disposition of a civil case was 6.5 months in the Northern District and 7.9 months in the Eastern District of Kentucky. *See* Comparison of Districts Within the Seventh Circuit – 12 Month Period Ending September 30, 2012, at http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2012/comparison-districts-within-circuit-september-2012.pdf&page=7.

For FY 2012, the median time from filing a civil case to trial was 31.2 months in the Northern District. Although the Eastern District of Kentucky did not report time to trial for FY 2012, its median time for FY 2011 was 23.6 months, while this District took an average of 28.4 months for FY 2011. *Id.* These numbers are not entirely dispositive, as it appears that disposition of a case is, on average, slightly faster in the Northern District; but, the median time from filing to trying a civil case is slightly better in the Eastern District of Kentucky. It should be noted, however, that significantly more cases are filed in the Northern District (over 10,000)

than the Eastern District of Kentucky (slightly more than 2,200). This information slightly weighs in favor of transfer to the Eastern District of Kentucky.

Whether transfer of venue is proper also depends in part on a court's familiarity with applicable law. In this case, there are alleged violations of the FTC Act, a federal law with which neither district can claim superior familiarity. While the Northern District can claim more familiarity with respect to the Illinois state claims, the Eastern District of Kentucky can claim more familiarity with respect to the Kentucky state claims, and neither district can claim more familiarity with the North Carolina state claims. Therefore, this factor is neutral.

The desire of a court to resolve issues is the final consideration. The Northern District has an interest in resolving issues of its residents, including those Illinois consumers allegedly harmed by Defendants' scheme. However, Kentucky has a stronger interest in resolving the underlying dispute that affects its local companies and citizens. Furthermore, two class actions are currently pending against Defendants in the Eastern District, *Day v. Fortune Hi-Tech Mktg. Inc.*, No. 10-cv-305, and *Wallace v. Fortune Hi-Tech Mktg., Inc.*, No. 10-cv-2641. Due to the pendency of these related actions, the interest of justice would be served by transfer to the Eastern District. Consequently, this factor weighs in favor of transfer.

Considering the provisions of Section 1404(a) regarding transfer discussed above, although both venues would be proper, the transfer to the Eastern District of Kentucky is appropriate. Therefore, Defendants' Motion to Transfer to the Eastern District of Kentucky is granted.

Therefore, the Court refers all other pending motions to the transferee court for resolution. *See* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 15 Federal Practice and Procedure § 3846 (3d ed. 2007) ("A transfer under Section 1404(a) must be complete. The

9

transferor court cannot transfer the case for some purposes while retaining jurisdiction over the same aspects of the case for some other purpose.").

## CONCLUSION

In the interest of justice and fairness, as well as the sake of convenience, Defendants' Motion to Transfer Venue [45] is granted. The case is transferred to the United States District Court for the Eastern District of Kentucky, and all pending proceedings are referred to that court. Because important motions are pending in this matter, transfer is to take effect immediately.

Date: May 1, 2013

JOHN W. DARRAH
United States District Court Judge