UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 13-123-KSF

FEDERAL TRADE COMMISSION, *et al*                                    PLAINTIFFS

v.                                    **OPINION & ORDER**

FORTUNE HI-TECH MARKETING, INC., *et al*                            DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

Currently before the Court is the motion of Robb Evans & Associates, LLC ("Temporary Receiver" or "Receiver") for approval and payment of receiver's and professionals' fees and expenses incurred from the inception of the receivership through February 28, 2013 [DE #81]. This motion is fully briefed and is ripe for review.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs, the Federal Trade Commission, the Commonwealth of Kentucky, the State of North Carolina, and the State of Illinois, commenced this action pursuant to the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 41-58, and the consumer protection statutes of Kentucky, Illinois, and North Carolina. The Federal Trade Commission is an independent agency of the United States created by the FTC Act. Among other responsibilities, the FTC enforces Section 5(a) of the FTC Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce." *Id*. § 45(a)(1).

The plaintiffs filed this civil action on January 24, 2013 in the Northern District of Illinois. [DE #1]. Their eight count complaint for permanent and other equitable relief alleges that the

defendants, Fortune Hi-Tech Marketing, Inc. FHTM, Inc., Alan Clark Holdings, LLC, FHTM Canada, Inc., Fortune Network Marketing (UK) Limited, Paul Oberson, and Thomas A. Mills, violated the FTC Act and five state statutes by: (1) promoting a pyramid scheme; (2) misrepresenting that consumers who become representatives of the Defendants would earn substantial income; and (3) providing promotional materials to be used in recruiting new participants that contain false and misleading representations.   On the same day, the United States District Court for the Northern District of Illinois granted the Plaintiffs' *Ex Parte* Motion for a Temporary Restraining Order (the "TRO") and appointed Robb Evans & Associates as Temporary Receiver over the Corporate Defendants [DE #23].

On April 2, 2013, the Temporary Receiver filed a motion for approval and payment of fees and expenses for the period from January 24, 2013 through February 28, 2013 (the "initial expense period") [DE #81].   Specifically, the Temporary Receiver seeks approval and payment of receiver fees totaling $238,433.65, receiver expenses totaling $59,701.34, attorneys's fees in the sum of $24,235.65 and costs of $146.71 incurred by lead counsel McKenna Long & Aldridge LLP, attorneys' fees in the sum of $10,453.00 and costs of $157.02 incurred by Wyatt Tarrant & Combs LLP, and attorneys' fees in the sum of $3,985.00 incurred by Barnes & Thornburg.   According to the motion, the total Temporary Receiver's fees and expenses and professionals' fees and expenses incurred is $337,112.37.[1]

This matter was subsequently transferred to this Court pursuant to 28 U.S.C. § 1404(a) on May 1, 2013 [DE ##91, 92].   On May 10, 2013, United States Magistrate Judge Robert E. Wier

---

[1] The Receiver, in its Reply, has agreed to a 50% reduction in all travel time during this initial period.   This results in a reduction of $27,574.08, or 11.6% of the Receiver's fee request.

conducted a telephonic motion hearing [DE #113]. After hearing from the parties, Magistrate Judge Wier entered his Order setting forth deadlines for responding to pending motions and scheduled this matter for a hearing on the pending preliminary injunction motion for May 28, 2013. Magistrate Judge Wier also recommended that the Court extend the TRO through May, 28, 2013 [DE #114]. By Order of May 14, 2013, the Court entered its order finding good cause under Rule 65(b)(2) for extending the TRO through completion of the Preliminary Injunction hearing on May 28, 2013 [DE #115].

On May 28, 2013, the Court entered the stipulated Preliminary Injunction [DE #134]. Among other things, the stipulated Preliminary Injunction ordered that the Temporary Receiver become the Permanent Receiver, and provided for the Receiver to receive a reasonable compensation subject to application for approval and payment of such compensation. On June 21, 2013, the Court entered a stipulated Agreed Order authorizing the Receiver to sell certain assets of the Receivership Defendants including real property located in Danville, Kentucky and personal property in an office located in Lexington, Kentucky [DE #146]. Then, on August 13, 2013, the Court entered a stipulated Agreed Order authorizing the Receiver to sell other assets of the Receivership Defendants including inventory located in Canada and all trademarks [DE #157]. On August 8, 2013, the Receiver filed a motion for a status conference [DE #155].

## II.    DISCUSSION

In support of its motion, the Receiver has thoroughly summarized its efforts in preparing for and making a coordinated entry into the Receivership Defendants' facilities in Lexington, Kentucky and Danville, Kentucky. Specifically, the Receiver's initial activities included securing the business records and physical assets, meeting with and interviewing the Receivership Defendants' personnel

3

and principals, and conducting an extensive review and detailed analysis of the Receivership Defendants' financial records and other business records and files to create an assessment of the business operations and the ability of the Receivership Defendants to operate lawfully and profitably. After this investigation, the Receiver prepared its Temporary Receiver's Report, addressing the preliminary financial analysis, the results of its examination of the financial and business operations of the Receivership Defendants and the Temporary Receiver's preliminary conclusions and support for its finding that the Receivership Defendants operated what is in the nature of a pyramid scheme. The Declarations of Brick Kane, Chief Operating Officer of Robb Evans & Associates, Kenton Johnson, Vice President of Robb Evans & Associates, and Gary Owen Caris, a partner in the firm of McKenna Long & Aldridge, provide further explanation of the Receiver's duties and responsibilities, and support for the motion.

The Plaintiffs do not oppose the Receiver's motion, as amended by its Reply [DE # 88]. The Defendants, however, oppose the motion on four grounds [DE #83]. First, the Defendants contend that the motion is premature. However, under the clear terms of the TRO, the Receiver was required to bring its motion within 60 days of the entry of the TRO [DE # 23, Section VII.B]. Nevertheless, the Defendants maintain that the motion is premature at this stage of the proceedings because the facts do not establish that the Receiver has undertaken any actions that have benefitted the FHTM estate. The Receiver's compensation is not based on whether or not there has been an increase in the value of the property or receivership business. *See Securities and Exchange Commission v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992). Rather, the TRO provides that the Receiver is entitled to reasonable compensation for the performance of its duties from the assets of the receivership estate [DE #23, Section VII.G]. Thus, the Court must consider whether the Receiver performed its

assigned duties in a professional, competent and responsible manner.  Here, the Receiver's motion adequately sets out not only its responsibilities and duties as tasked by the TRO, but also the amount and type of work performed in accordance with those responsibilities and duties.

The Defendants also suggest that because the Defendants' right to legal fees have not yet been determined by the Court, it is premature to determine the Receiver's right to fees.  However, there is no doubt under the law, and the terms of the TRO, that the Receiver is entitled to recover its reasonable fees and expenses for the assignment it took from the court.  *See* 2 Clark, Ralph Ewing, *A Treatise on the Law and Practice of Receivers*, § 637, p. 1052 (3rd ed. 1992).  For these reasons, the Receiver's motion is not premature.

The Court now turns to the merits of the Receiver's motion and the Defendants' objection that the Receiver has not substantiated the reasonableness of the hours spent on this case.  In seeking approval of fees and expenses, the Receiver must make "a prima facie case in support of the requested award."  *In re Blackwood Assoc., L.P.,*, 165 B.R. 108, 111 (Bankr.E.D.N.Y. 1994); *see also Federal Trade Commission v. Capital Acquisitions & Management Corp.*, 2005 WL 3676529 (N.D.Illinois, August 26, 2005).  Here, the Receiver's motion is sufficiently detailed to establish a prima facie case.  The motion and supporting documentation includes detailed invoices which identify in descriptive detail the tasks performed, who performed each task, the person's position and billing rate, and how much time was devoted to each task.  Additionally, the Receiver has provided the Declaration of Brick Kane, the Chief Operating Officer of Robb & Associates, and Kenton Johnson, the Executive Vice President of Robb Evans & Associates, which provide a detailed overview of the work performed by the Receiver, as well as the Declaration of Gary Owen Caris, which provides a detailed overview of the legal work performed by various attorneys and staff.

5

By way of example, once being appointed by the Court the Receiver had to maintain adequate staffing to effectuate possession and control of the Defendants' business, interview management and staff, take control of business records, both electronic and paper, and begin analyzing business operations. The Defendants' business generated over 252 million in sales and commission revenue from 2009 to 2012 - not a small-scale operation. Based on information that the Receiver obtained that there might be as many as 100 employees on multiple floors in the FHTM building in Lexington, Kentucky and an unknown number of employees in a warehouse in Danville, Kentucky, the Receiver brought eleven members from its Los Angeles and Law Vegas offices to Kentucky. Additionally, the Receiver retained five members of Hays Financial Consulting to assist.

As soon as the Receiver discovered that just over 40 employees and senior management were in Lexington, Kentucky, and that only 11 employees were in Danville, Kentucky, it immediately scaled back the number of staff deployed to Kentucky. Despite the smaller scale of operation than originally anticipated, Defendants' business nevertheless had over 40 employees and senior managements located on three separate floors of a commercial space in Lexington, Kentucky that had to be secured, as well as a warehouse in Danville, Kentucky.

In addition to entering and securing the two business locations, the Receiver analyzed the business and financial operations of the Defendants. Based on this extensive review, the Receiver prepared its Temporary Receiver's Report, containing its preliminary financial analysis, the results of its examination of the financial and business operations of the Receivership Defendants and the Temporary Receiver's preliminary conclusions and support for its finding that the Receivership Defendants operated what is in the nature of a pyramid scheme.

Upon review, the Court finds that the Receiver has more than adequately established a prima facie case. As a result, the requested amounts are presumptively reasonable. *In re Hunt's Health Care*, 161 B.R. 971, 980 (Bankr.N.D.Ind. 1993). Because of this presumption of reasonableness, the Defendants "carry the burden of explaining what therein is unreasonable or, at least, what would be reasonable under the circumstances. Absent such evidence by [Defendants], the opposition fails." *In re Blackwood Assoc. L.P.,* 165 B.R. 108, 112 (Bankr.E.D.N.Y. 1994). In other words, the Defendants may not object "based on the general proposition that the fee sought is simply too much." *In re Hunt's Health Care*, 161 B.R. at 982. Rather, the Defendants "must, at some point, identify any allegedly improper, insufficient, or excessive entries and direct the court's attention to them." *In re Cont'l Ill. Sect. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). Here, the Defendants have not met this burden, with one exception.

First, the Defendants object to the amount billed by Robb Evans & Associates for the time it took eleven of the Receiver's personnel to travel from the West Coast to Lexington, Kentucky. However, the Receiver has agreed to a 50% reduction in its expenses associated with travel. The Court finds this accommodation reasonable and sufficient to address the Defendants' objections.

Next, the Defendants object to the Receiver's January 27, 2013 billing records indicating that two employees billing at $301.50 per hour "survey[ed] real properties in preparation for immediate access," while a third employee billing at $135 per hour performed "location drive-bys." The Defendants contend that none of the documentation submitted by the Receiver explains why it was reasonable or necessary for its top billers to spend multiple hours scouting locations. A review of the Receiver's documentation reveals that Brick Kane and Kenton Johnson both billed 2.80 hours on January 27, 2013, at a rate of $301.50, for a total of $1,688.40, and that Ed Ropp billed 5.70 hours

at a rate of $135 per hour, for a total of $769.50 [DE #81-1, p. 22, 23, 35]. While the Receiver has explained the preparation for initial stages of the receivership, including the need to obtain information about the Defendants' business operations, the time and amount charged for this surveying appears unreasonable. Accordingly, the Court will reduce the amount awarded by 50 percent, or $1,228.95.

Next, the Defendants challenge the Receiver's January 28, 29 and 30, 2013 billing records. On January 28, 2013, the Defendants complain that 9 employees spent over ten hours each at FHTM's facilities and that many of the employees performed identical tasks. However, as the Receiver has explained, while members of its team may have performed the same type of task, such as interviewing employees, different staff interviewed different employees. The same explanation applies to members of the accounting team, while all analyzing accounting data, the same staff did not analyze all the same data. In light of the large scale of the Defendants' operations, the Court cannot find that the Receiver's January 28, 2013 billing records are recessive or redundant. Similarly, entries on January 29 and 30, 2013 are also supported by the record and the size and complexity of the Defendants' operations.

Overall, the Court finds that the work performed by the Receiver was necessary, first to secure the business premises, its assets and paper and electronic documentation, and then to analyze in depth on an expedited basis and explain in its Report to the Court the Receivership Defendants' business operations. Accordingly, the Court will grant the Receiver's motion, with the following exceptions: (1) the amount billed for the January 27, 2013 site surveys will be reduced by 50% (a reduction of $1,228.95); and (2) the amount billed by the Receiver for travel time will also be reduced by 50% (a reduction of $27,574.08).

III.   **CONCLUSION**

The Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)   the Receiver's motion [DE #81] is **GRANTED IN PART** as follows:

    (A)   The fees and expenses of the Receiver, including Receiver's fees, Senior Staff fees, and Support Staff fees totaling $210,859.58, and Receiver's expenses totaling $59,701.34 are hereby approved and authorized to be paid from assets of the receivership estate;

    (B)   Attorneys' fees in the sum of $24,235.65 and costs of $146.71 incurred to the Receiver's lead counsel, McKenna Long & Aldridge LLP, for the total sum of $24,382.36 are hereby approved and authorized to be paid from the assets of the receivership estate;

    (C)   Attorneys' fees in the sum of $10,453.00 and costs of $157.02 incurred to the Receiver's counsel in Lexington, Kentucky, Wyatt Tarrant & Combs LLP, for the total sum of $10,610.02 are hereby approved and authorized to be paid from assets of the receivership estate;

    (D)   Attorneys' fees in the sum of $3,985.00 incurred to the Receiver's local counsel Barnes & Thornburg LLP are hereby approved and authorized to be paid from assets of the receivership estate;

    (E)   Notice of the Receiver's Motion is sufficient based on (a) service of the Motion and all supporting papers on the parties to this action; (b) service of the Notice of Hearing and Notice of Motion on all known non-consumer creditors of the receivership estate with the Receiver offering to provide a complete copy of the Motion to any interested party upon written request; and (c) posting of the Motion and supporting pleadings, exclusive of time and billing records, on the Receiver's website for this case;

(2)   the Receiver's motion [DE #81] is **DENIED IN ALL OTHER RESPECTS**; and

(3)   the Receiver's motion for status conference [DE # 155] is **DENIED AS MOOT**.

This August 20, 2013.



**Signed By:**

**_Karl S. Forester_**   KSF

**United States Senior Judge**

9