# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 5:13-cv-123-GFVT |
| v. | ) ) ) | |
| FORTUNE HI-TECH MARKETING, INC., a Kentucky corporation, *et al.* | ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO *DAY* AND *WALLACE* MOVANTS' MOTIONS FOR LEAVE TO FILE MOTIONS SEEKING ATTORNEYS' FEES

Plaintiffs oppose the motions presented by the individual plaintiffs (movants) in *Day v. Fortune Hi-Tech Marketing, Inc., et al.*, Civ. No. 5:10-CV-00302-GFVT (Doc. 214) and the individual plaintiffs (movants) in *Wallace v. Fortune Hi-Tech Marketing, Inc., et al.*, Civ. No. 5:11-CV-00127-GFVT (Doc. 215), seeking leave to file their respective attorneys' fee motions (Docs. 214-3 & 212).[1] The *Day* and *Wallace* movants are not parties to case and their motions are not properly before the Court. They have never sought to intervene directly in this case, which they must do before they would be entitled to even file the motion for leave to seek attorneys' fees. But even if the movants had intervened, the simple fact is that they had no involvement in the investigation and development of this case, they had no role in the litigation of this case, and they played no part in the substantive negotiations which resulted in the

---

[1] Should the Court grant the movants' request for leave to file, Government Plaintiffs intend to submit a substantive response in opposition to the attorneys' fee motions. But it is important to note at this point that any amounts paid to the movants' attorneys out of the settlement in this case will come directly out of the pockets of Defendants' victims.

1

settlement of this case between Government Plaintiffs and Defendants.

### I. The *Day* and *Wallace* Movants Must Seek to Intervene Before Filing Their Motions for Leave.

The *Day* and *Wallace* movants are not parties to this lawsuit and they must be given leave to intervene before their motions for leave to seek attorneys' fees can be properly heard by this Court. [2] The *Day* movants unsuccessfully attempted to intervene in this case over a year ago for the limited purpose of lifting the stay as it related to the Sixth Circuit appeal concerning the enforceability of an arbitration clause. (Doc. 147.) In rejecting the *Day* movants' argument that they should be allowed to intervene in this case either as of right or permissively, the Court held that Government Plaintiffs "adequately represent the interests of all consumers." (Doc. 154 at p. 3.) Perhaps discouraged by this result, the *Day* and *Wallace* movants have not (properly) attempted to intervene again.

Instead, the *Day* and *Wallace* movants are requesting leave to file motions seeking nearly $1 million in attorneys' fees from the settlement negotiated by Plaintiffs Federal Trade Commission, the State of Illinois, Commonwealth of Kentucky, and the State of North Carolina in this case. Government Plaintiffs, after amassing volumes of evidence against Defendants, negotiated a final order with broad injunctive relief, including banning Defendants from being involved in multi-level marketing programs and prohibiting them from making any false earnings claims. (Doc. 202 at pp. 5-6.) The order also requires Defendants to pay $3,541,000 in equitably monetary relief, in addition to requiring the turnover of the proceeds from the sale of

---

[2] In their motion, which is fashioned as a motion for leave to file their brief, the *Day* movants refer to Federal Rule of Civil Procedure 24 and intervention of right (*see* Doc. 214), yet their proposed order only addresses leave to file their attorneys' fee motion (*see* Doc. 214-1). The *Wallace* movants first skipped both steps by proposing an order simply granting their motion attorneys fees (*see* Doc. 212-3), but subsequently filed a proposed order similar to that of the *Day* movants (*see* Doc. 215-2).

2

certain properties. (*Id.* at pp. 7-14.)

The *Day* and *Wallace* lawsuits were not affected by the Government Plaintiffs' settlement – the individual plaintiffs in those cases were free to continue to pursue their cases, against both the common defendants and the other defendants in the private lawsuits, the majority of whom Government Plaintiffs did not sue. According to the movants, the individual plaintiffs (not acting on behalf of the putative class) now have reached an agreement with six of the individual defendants, which includes a $35,000 payment to the individual plaintiffs and $45,000 for attorneys' fees and expenses. (Doc. 212-2 at p. 250.) Despite having negotiated their own partial settlements, however, the *Day* and *Wallace* movants now seek nearly $1 million from the settlement funds in this case – funds that the movants had no role in procuring, and funds that will eventually be returned to consumers.[3]

## II. The Government Developed its Lawsuit Without Any Aid From the *Day* and *Wallace* Litigants.

In their attempt to come before the Court to seek attorneys' fees, the *Day* and *Wallace* movants have implied that they had some meaningful role in this case, thereby creating a property interest in the settlement funds obtained here. This is simply not true. Government Plaintiffs in this case – state and federal law enforcement agencies – conducted their investigations independently of, and without any substantive involvement from, the *Day* and *Wallace* plaintiffs. In no way did Government Plaintiffs coordinate their efforts with the private lawsuits – indeed, the cases involve a different set of defendants and altogether different legal theories.

### A. *Federal Trade Commission, et al., v. Fortune Hi-Tech Marketing, Inc., et al.*

---

[3] Once the receivership over the Corporate Defendants in this case is finalized, Plaintiffs intend to distribute all of the funds collected to consumers for redress, without any deductions other than the administrative costs incurred by the redress administrator handling distribution.

3

Defendants' business operations had been challenged by several states before this case was filed, and before either the *Day* or *Wallace* cases were filed. The North Dakota Attorney General issued a cease and desist letter to FHTM in December 2009; the Texas Attorney General sent FHTM a civil investigative demand in August 2010, and reached a settlement in July 2011; and, the Montana Securities Department within the Office of the State Auditor filed a case against FHTM in March 2010, announcing a settlement the following month. (*See* Doc. 19-13 at p. 15.) These state settlements required Defendants to pay restitution to some of those consumers who had fallen victim to Defendant's scheme, and all predated the filing of the *Day* and *Wallace* cases.[4]

Government Plaintiffs' initial *ex parte* filing was the culmination of a lengthy and thorough investigation of Defendants' business practices. This investigation began as early as August 2010, when the Office of the Kentucky Attorney General sent two Subpoena and Civil Investigative Demands to Defendant FHTM. (Doc. 15 at 5.) Plaintiff FTC's investigators then spent much of 2011 and part of 2012 attending FHTM conventions and meetings, as well as compiling videos and other online evidence of Defendants' outrageous earnings' claims. (*See* Doc. 15.)

Government Plaintiffs' expert, FTC economist Dr. Peter Vander Nat, analyzed the evidence collected throughout the investigation in reaching the conclusion that Defendants were more than likely operating a massive pyramid scheme, resulting in at least $169 million of consumer injury.

---

[4] Widespread media attention as to Defendants' business practices also predated the filing of the private actions. *See, e.g.*, http://www.whas11.com/news/business/I-Team-Inivestigation-Fortune-Hi-Tech-Marketing-94266814.html (Kentucky); http://www.kens5.com/story/local/2014/08/05/10612929/ (Texas); http://www.wcnc.com/story/local/2014/08/05/11068393/ (North Carolina); http://www.kxlh.com/news/fhtm-agrees-to-pay-840k-to-settle-pyramid-scheme-charge/ (Montana).

4

(Doc. 19-17 at pp. 3-4.) Dr. Vander Nat's conclusion was supported by the Receiver's independent assessment of Defendants' operations. The Receiver reported an average of 74.4% of the active representatives earned less than $10 per year between 2009 and 2012, and more than 88% of the representatives did not earn enough to recoup their enrollment fees. (Doc. 58 at p. 8.)

This evidence convinced Government Plaintiffs to file suit against Defendant Fortune Hi-Tech Marketing, Inc., (FHTM), and the other Defendants named in this action, alleging that they operated a massive pyramid scheme, promising its recruits a vast sum of money and lavish lifestyles, when, in reality, Defendants delivered significant financial losses to nearly all of the consumers who joined Defendants' scheme. Government Plaintiffs' complaint included multiple violations of state and federal law, including: operating an illegal pyramid scheme in violation of the FTC Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, the Kentucky Pyramid Sales Act, and the North Carolina Pyramid and Chain Schemes Statute; and, making false earnings claims in violation of the FTC Act and the respective state statutes. (Doc. 4.) In seeking to put an immediate end Defendants' deceptive and unfair practices, Government Plaintiffs sought an *ex parte* temporary restraining order, an asset freeze, and an appointment of a receiver over the corporate Defendants.

In support of their TRO motion, Government Plaintiffs submitted *four* volumes of evidence – including Defendants' own documents, videos, and other promotional materials; evidence of undercover activity conducted by Government Plaintiffs; and, a forty-four page declaration from Dr. Vander Nat.[5] The weight of this evidence convinced Judge Darrah, sitting in the Northern

---

[5] The *Day* and *Wallace* movants have overstated the significance of the *one* document Plaintiffs submitted with their TRO filings that was obtained from the private lawsuits. The document – one of four versions of FHTM's policies and procedures filed by Plaintiffs – could

District of Illinois, to enter the requested TRO. (Doc. 20.)

On January 28, 2013, the Court-appointed Receiver assumed control of Defendants' business operations, and the Receiver, pursuant to the TRO, then invited Government Plaintiffs to enter the business premises. (Doc. 23 at pp. 25-26.) During this immediate access, Government Plaintiffs discovered additional evidence of Defendants' false earnings claims and pyramid scheme including: complaints from representatives about false earnings claims; internal documents reflecting the deceptive nature of Defendants' income disclosures; and, the inefficacy of Defendants' compliance department. Government Plaintiffs submitted this evidence to the Court in May 2013 (Doc. 116), as part of the parties briefing on Government Plaintiffs' motion for a preliminary injunction. (Doc. 99.)

Instead of proceeding with the scheduled preliminary injunction hearing, Defendants chose to stipulate to a preliminary injunction, which the Court entered on May 24, 2013. (Doc. 132.) The preliminary injunction continued the main provisions of the temporary restraining order – retaining the appointment of a receiver and maintaining the asset freeze over the individual Defendants. (*Id.*)

### B. *Day* and *Wallace* Lawsuits

In stark contrast to Government Plaintiffs' case, the *Day* and *Wallace* lawsuits never advanced enough to address the substance of the purported classes' allegations. The *Day* case, which was filed in September 2010 in this district, involved thirty-eight defendants, only three of whom are in common with Plaintiffs' case.[6] The *Day* plaintiffs alleged that defendants operated

---

have easily been obtained elsewhere given Plaintiffs' extensive investigation, but Plaintiffs chose to submit the copy that was already in the public domain.

[6] Defendants in the *Day* case include, among others: Jeff Orberson, David Mills, Simon Davies, Ruel Morton, Todd and Ashley Rowland, Alexis and Theresa Adame, Scott and Molly Aguilar, Joel McNinch, and Darla DiGrandi. In total, there are thirty-eight defendants in the *Day* action, with only

6

a pyramid scheme in violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), Kentucky's state laws, and the common law. Similarly, the *Wallace* case, filed in December 2010, also included defendants not named by Plaintiffs in this action, and was premised on violations of California state law and federal racketeering laws. Eventually, in April 2011, the *Day* and *Wallace* cases were consolidated in the Eastern District of Kentucky.

As the movants have stated, their three years in litigation primarily was spent battling their defendants about the enforceability of the arbitration clause in FHTM's contract with its representatives. Eventually, the Sixth Circuit upheld the district court's determination that the arbitration clause was not enforceable. (Doc. 212-6.) Since that time, multiple extensions have been given to various defendants to file their answers, and there has been no substantive briefing in the case. Indeed, neither movant even filed a motion for class certification. Now, the named individual plaintiffs have apparently reached a settlement with six of the defendants named in the two lawsuits. The settlements would not resolve the putative class allegations, nor would they resolve the allegations against the remaining defendants, which the *Day* and *Wallace* movants are free to pursue.

### C. Settlement Discussions

The *Day* and *Wallace* movants played no substantive role in the settlement negotiations in this case, and, contrary to their suggestion, they have no entitlement to the nearly $1 million in fees from the funds obtained by Government Plaintiffs. As Government Plaintiffs reported to the Court in various status reports (Docs. 179 & 183), the *Day* and *Wallace* movants were involved in settlement discussions in this case for a brief period (and were not included in the

---

three of those in common with Plaintiffs' case (FHTM, Paul C. Orberson, and Thomas A. Mills).

settlement conference). This brief participation, however, led to many delays in ultimately resolving this case, in large part because private counsel could not devise a mechanism to adequately resolve the class allegations without significantly depleting the funds available for consumer redress – an untenable resolution for Government Plaintiffs.

Eventually, the parties decided to continue negotiations without the inclusion of the private counsel. (*See* Doc. 202.) The final order agreed upon includes broad injunctive relief, including banning Defendants from being involved in multi-level marketing programs and prohibiting them from making any false earnings claims. (*Id.* at pp. 5-6.) The order also requires Defendants to pay $3,541,000 in equitable monetary relief, in addition to requiring the turnover of the proceeds from the sale of certain properties. (*Id.* at pp. 7-14.)

### III. Private Counsel Does Not Have an Interest in the Settlement Funds Obtained by Government Plaintiffs.

Government Plaintiffs oppose the *Day* and *Wallace* movants' attempt to disrupt the settlement in this case and deplete the funds intended for consumer redress. Contrary to what the movants may argue, the final order in this case does not guarantee them the right to seek fees in this case. Rather, Government Plaintiffs merely made clear that they would oppose any such attempt. (Doc. 202 at p. 15.) Further, though the parties at one time contemplated that private counsel might attempt to seek fees in this case, such discussions were premised on the assumption that the private lawsuits would be settled as class actions and as part of Plaintiffs' case. A joint settlement did not happen, and, instead, the *Day* and *Wallace* movants subsequently negotiated their own partial settlements, which included $35,000 in payments to the individual plaintiffs and $45,000 in attorneys' fees and expenses.

Now, after having partially settled their cases, the movants are seeking leave to request even more money for their attorneys. As noted, the private lawsuits included many more

defendants than Government Plaintiffs sued in this case – there is no reason why the funds collected by Government Plaintiffs from the few common Defendants that the cases share should be used to cover all of the fees and expenses incurred by private lawyers who sued a much larger number of defendants. The movants chose their remedy, negotiating their settlements, which included significant funds for attorneys, and should not be given a second chance to dip into funds that the movants had no role in procuring.

Accordingly, Plaintiffs respectfully request that the *Day* and *Wallace* movants' motions to seek leave to file their respective attorneys' fee petitions be denied.

                                              Respectfully submitted,

                                              JONATHAN E. NUECHTERLEIN
                                              General Counsel

Dated: August 11, 2014              s/ David A. O'Toole
                                              DAVID A. O'TOOLE
                                              ELIZABETH C. SCOTT
                                              ROZINA C. BHIMANI
                                              JOHN C. HALLERUD
                                              Federal Trade Commission
                                              55 West Monroe Street, Suite 1825
                                              Chicago, Illinois 60603
                                              (312) 960-5634 [telephone]
                                              (312) 960-5600 [facsimile]

                                              Attorneys for Plaintiff
                                              Federal Trade Commission

## CERTIFICATE OF SERVICE

  I, David A. O'Toole, hereby certify that on August 11, 2014, I electronically filed **PLAINTIFFS' RESPONSE IN OPPOSITION TO DAY AND WALLACE MOVANTS' MOTIONS FOR LEAVE TO FILE MOTIONS SEEKING ATTORNEYS' FEES,** with the Court using the CM/ECF system, which will automatically send copies to:

Stephen G. Amato, McBrayer, McGinnis, Leslie & Kirkland, PLLC
Jaron P. Blandford, McBrayer, McGinnis, Leslie & Kirkland, PLLC
D. Luke Morgan, McBrayer, McGinnis, Leslie & Kirkland, PLLC
Jose A. Lopez, Perkins Coie LLP
  Attorneys for Defendants

Mary Louise Fullington, Wyatt Tarrant & Combs LLP
Gary Owen Caris, McKenna Long & Aldridge LLP
Lesley Anne Hawes, McKenna Long & Aldridge LLP
  Attorneys for Receiver

Todd Leatherman, Office of the Kentucky Attorney General
Dinah L. Koehler, Office of the Kentucky Attorney General
Adam J. Sokol, Office of the Illinois Attorney General
Creecy C. Johnson, North Carolina Department of Justice
  Attorneys for Plaintiffs

R. Kenyon Meyer, Dinsmore & Shohl LLP
Stephen J. Mattingly, Dinsmore & Shohl LLP

and by electronic mail to:

Caryn Lara Trombino, Perkins Coie LLP
Regina L. LaMonica, Perkins Coie LLP
Edward D. Burbach, Gardere Wynne Sewell LLP
Brian M. Johnson, Bingham Greenebaum Doll LLP
  Attorneys for Defendants

Alexander M. Schack, Law Offices of Alexander M. Schack

           Respectfully Submitted,

           /s/ David A. O'Toole
           DAVID A. O'TOOLE
           Federal Trade Commission
           55 W. Monroe Street, Ste. 1825
           Chicago, Illinois 60603
           Voice: (312) 960-5601; Fax: (312) 960-5600
           email: dotoole@ftc.gov